FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C & 1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

( CLASS ACTION )

| (1). | JOHN C. JOHNSON | 279192 |
| (2). | WILLIAM GREGORY | 411406 |
| (3). | DAYMIEN J ROBERTS | 374421 |
| (4). | BAYANT BANKS | 218687 |
| (5). | RONALD F. BROOKS | 294765 |
| (6). | CARLOS JACKSON | 273677 |
| (7). | FENEL BAINE | 450212 |
| (8). | JOHN FOLKS | 126234 |
| (9). | BRANDON OWENS | 501783 |
| (10). | CHRIS ROGERS | 308180 |
| (11). | MICHAEL L. JONES | 417267 |
| (12). | JAMES CAULK | 293676 |

( NAME OF PLAINTIFF )     ( INMATE NUMBER )

DELAWARE CORRECTIONAL CENTER 1181
PADDOCK ROAD SMYRNA, DELAWARE 19977
( COMPLETE ADDRESS WITH ZIP CODE )

Vs.

(1). CARL DANBERG

(2). RICK KEARNEY

(3). PERRY PHELPS

(4). MICHAEL COSTELLO

(5). MICHAEL LITTLE

(6). RONALD HOSTERMAN

( NAMES OF DEFENDANTS )

AUG 22 2008
U.S. _____
DISTRICT OF DELAWARE

08 - 539

( CASE NUMBER )
TO BE ASSIGNED BY U.S. DISTRICT
( COURT )

CIVIL COMPLAINT

•• JURY TRIAL REQUESTED

I. PREVIOUS LAWSUITS

N/A

COPY

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?    (• • Yes)  • • No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?  (• Yes)  • • No

C.    If your answer to "B" is Yes:

1.  What steps did you take? Thier was more than one Grievance Filed through the present Grievance Procedure Available At the Institution !

2.  What was the result? The Grievance Board Said that the claim was not Grievable or Appealable so all remedies are exhausted !

D.    If your answer to "B" is No, explain why not: _____N/A_____

## III.    DEFENDANTS (in order listed on the caption)

(1) Name of first defendant: CARL DANBERG

Employed as Commissioner Of CORRECTIONS at DELAWARE CORRECTIONALCENTER

Mailing address with zip code: 245 McKEE ROAD

DOVER, DELAWARE 19904

(2) Name of second defendant: RICK KEARNEY

Employed as BUREAU CHIEF at DELAWARE CORRECTIONAL CENTER

Mailing address with zip code: 245 McKEE ROAD,

DOVER, DELAWARE 19904

(3) Name of third defendant: PERRY PHELPS

Employed as WARDEN at DELAWARE CORRECTIONAL CENTER

Mailing address with zip code: DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD SMYRNA, DELAWARE 19977

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

(2)

III. DEFEDANTS (in order listed on the caption).

(4). NAME of First defendant: Michael ~~Costello~~ Costello.

Emplyed as Security Superintendent at DCC.

Mailing address with zip code: Delaware Correctional Center
1181 Paddock Road smyrna, Delaware 19977

(5). NAME of First defendant: Michael Little.

Emplyed as Legal Services Adminstrator at DCC.

Mailing address with zip code: Delaware Correctional Center
1181 Paddock Road smyrna, Delaware 19977

(6). NAME of First defendant: Ronald Hosterman

Emplyed as Treatment Administrator at DCC.

Mailing address with zip code: Delaware Correctional
Center 1181 Paddock Road smyrna, Delaware 19977.

Additional Defendants, their emplovment,
and addresses with zip codes, on this extra sheets.

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

(1) • Defendant, (Carl Danberg of head of corrections department) is the
   ▪ (Director/commissioner) of the state of Delaware. He is legally responsible
   for the overall operation of the Department and each institution under its
   Jurisdiction, including Delaware Correctional Center where plaintiffs are confined

(2) • Defendant, (Rick Kearney, Bureau Chief of corrections department) of the state
   Delaware. He is legally responsible for the operation of Delaware Correctional
   ▪ center where plaintiffs are confined.

(3) • Defendant, (Perry Phelps, Warden of Prison) is the superintendent/warden of
   Delaware correctional center. He is legally responsible for the operation of
   Delaware Correctional Center and for the welfare of all the inmates of that prison.

(4) • Defendant, (Michael Costello, Held the rank of security superintendant) assigned to
   ▪ Delaware Correctional Center, who at times mentioned in this complaint.

(5) • Defendant, (Ronald Hosterman, Treatment Administrator) for the department
   of corrections for Delaware Correctional center who was mentioned in this complaint.

(6) • Defendant, (Ronald Hosterman, Treatment Administrator) for the department
   of corrections for Dcc who was mentioned in this complaint.

(7) • Each defendant is sued individually and in his official capacity, and under the color of state law

## V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1.    Under the liberal construction of complaints afforded by Pro-Se
   prisoners class action, we pray that these complaints, challenges be
   acknowledged and viewed as culmulative instances of cruel and
   unusual
   ~~condition~~ punishment that these inmates in this class action suit have been
   sufferring. After this honorable court views the procedure and function
   afforded to inmates ▪ in the (DCC) 'SHU/MHU' Housing unit. In
   which the deliberate indifference inmates suffer by being illegally
   housed under such malicious conditions which these issues are
   cause for,
   ~~nominal~~ Nominal Damage, Punitive Damages and grounds for injunction

(4)

tortore tactics that cause the inmates to have deteriorating compacities that are physically, emotionally, spiritually and

- mentally harmful due to all of the above mentioned it clear by the inmates in this class action suit showed, that they are suffering at the hand of obsessive periods of disciplinary housing for No explained reason. And the only proper and ethical method would be for the courts to order the (DCC) to releave us inmates

- from the cruel and ~~unusual~~ unusual punishment and to stop treating us worst then ~~as~~ enemy combatants, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole, Prohibiting prison officials from enforcing this confinement regulation. And that the court award punitive damages to plaintiffs' as its deems appropriate due to the violation of the eighth and fourteeth Amendments of the United state Constitution.

I declare under penalty of perjury that the foregoing is true and correct.


Signed this _____ 21st. day of ___August___ , 2008 .

(1). John C. Johnson #279192

(2). William Green #411406
   (Signature of Plaintiff ●)

(3). Daymian G. Roberts #374421
   (Signature of Plaintiff ●)

(4). Bryant Banks #218687
   (Signature of Plaintiff ●)

(5). Ronald L. Brooks #294765

(6). Carlos Jackson #273677

(7). Lionel Baine #450212

(8). John Ralbr #126234

(9). Brandon Owens #501783

(10). Chris Rogers #308180

(11). Mical l. Jones #417267

(12). James Carlk #293676

IV. STATEMENT OF CLAIM:

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

(A) • Defendants, Carl Danberg and Rick Kearney are legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Delaware Correctional center. And Defendant, Perry Phelps and Michael Costello, are legally responsible for the operation of Delaware Correctional center and for the welfare of all the inmates of (DCC). from 11-27-06 through 8-5-08 the class has been struck with these same allegation of hardship asserted in this complaint

The claims and statement of fact are that these Delaware Correctional Center (DCC) Prisoner, who put forth this complaint, are all being housed in the (MHU/SHU) maximum/medium High Security housing unit, where all of these inmates are being confronted with the same hardships characterize by the segregation housing unit (SHU). Which the (SHU) is a one man-cell maximum security housing unit. And the (MHU/SHU) is a two man to a cell maximum/medium High security housing unit, which both units (spend 165 hours out of 168 hours a week locked in their cells with little out of the cell activity)

(A-1) • The (SHU) is the most restrictive one man cell housing unit in DCC. SHU is reserved for those inmate's whom have demonstrated that they cannot be housed in a lesser security setting and/or who's behavior and history are conducive to maximum security housing.

The conditions in the SHU are extraordinarily restrictive. Inmates in (SHU) spend 165 out of 168 hours a week locked in their cells (alone) leaving their cell only for recreation for 45 minutes and a shower for 15 minutes, three days a week. These inmates can only walk around a small steel cage for recreation and are denied access to any types of equipment or mind stimulating activities are not permitted in cells.

(A-2) • Under some of the same condition as the (SHU), The (MHU/SHU) building is considered and suppose to be a flaw down setting where behavior has been demonstrated to have been deemed attractive for a more productive placement in the quality of life for a inmate in a lesser security housing unit. Which DCC Prisoners housed in the (MHU/SHU) building are considered to be under maximum/medium high security status, which perpetuates the conditions of confinement that are too extensive do to the over crowding of being double celled with another cellmate to spend 165 hours out of 168 hours a week locked in their cells together with little out of the cell activity. And the amount of space per inmate which double celling should not be a maximum security structure or setting that is originally designed for one prisoner. Also being that this maximum security lets three cell out at one time for recreation together, which six inmate are out of their cells at once, should not have such a extensive confindment. Because some inmate have complained that the confinement, housedness of being housed in a two-man cell (out) only three times per week for a 60 minutes to exercise an shower caused some inmates to endure unjust violence, Physical and psychological injury, including stress, anxiety, depression, headaches and muscle cramps, and that such confinement violated their Eighth and fourteenth Amendment rights to be free from cruel and unusual punishment.

(A-3) • The American Correctional Association standard for adult correctional Insitutions standard, which requires a minimum of one hour per day outside the cell exercise of SHU –

## IV. STATEMENT OF CLAIM:

A3
or solitary confinement inmates. Which (DCC) has used the (MHU/SHU) as the samething as (SHU) solitary confinement, but only with a cellmate, which should be a violation to the rights amended to prisoner, due to the amounts of recreation afforded to inmates. Which the amount of recreation in this case should be unconstitutional by prison law involving a cellmate in a maximum security unit with the same progress and influence as the (SHU). Which makes both building (MHU/SHU) and (SHU) subjected with the same conduct and principles as to the highest security for adult correctional institutional standard for prisons.

(B) • The Delaware Correctional Center retained a discretional point system, strickening inmate of earned goodtime and of fareness with a punishment synonamous to the harshness of double jeopardy.
   Defendants Ronald Hosterm, Perry Phelps and Michael Costello, are all responsible for the overall of inmates and there welfare, classification, rehabilitation achievements in (DCC). The time frame veries from Jan. 2006 through 2008 strickening the plaintiffs whom put forth this complaint as a whole.
   This point system enables inmates from going to a lesser restrictive unit to recieve any kind of treatment which is domiciling of segregated housing. Do to a significant break down in classification and in the classifications point system. Rehabilitation resources, educational — achievements and mental health programming are all out of reach for such inmates subjected to these higher security building. Which some inmates need these achievements of rehabilitation to be able to cope in todays civilization.

(B1) • Based on the inmates charges, age and time accumulated in this prison, It is stero-typically inclined with a prejudice and biasly facted point scale system in the DCC's classification. By the means of ineffective attention of the individual. The social workers apperance is basically non exsited to the needs for rehabilitation and the claims and statement of this civil complaint. With no one to see the unfairness of the conditions we experience and the serious stated facts this institution shows extreme wickedness towards the mind state and bad faith in allowing the inmates their right they are entitled to by the U.S. constitutions.

(B-2) • Work ethics of the units counselor are improper, do to a lack of corresponding to letters from inmate or no visits, except when it is time for their classification. Along with a improper appeal process for inmates who appeal their classification, which goes to the same board that keeps us back here in (DCC) which does not follow there own point system, even if our point level allows us to be in a minimum security housing unit. The institution can still keep us in higher security housing units illegally if they want too.

(B3) • Inmates are also forced to send their state issued property out that was bought through (DCC) commissary which are TV, fans, clothing, ext. after about 30 day of the inmate being moved. Just because they are housed in the higher security housing unit mostly because of the point system. And (DCC) wont allow for these items to be sent back in the institution, in which started May 15th 2008. Inmates are forced to buy these items all over again, which is a way for the institution (DCC) to profit off of these torturing methods being applied to us inmates by the (DCC).

   See... Exhibits (A) through (U), which are the exhibits in support of the claims of this filing complaint by the class members under this §1983 civil complaint...

(7)

# IV. STATEMENT OF CLAIMS

C. • Defendant's Michael Little of the Legal Services Administrator office for (DCC)'s Law Library. Michael Little is legally responsible for the operations of Legal services of (DCC) and Perry Phelps and Michael Costello holds Jurisdiction over that department.

The inmates at Delaware Correctional center (DCC) additionally, have no Physical access to the law library and they must identify and request materials that may be the wrong legal materials of law, or may not be provided in a timely fashion. Most inmates are incompetent to the law and are only allowed to possess five cases at a time, that must be returned for additional cases.

C-1 The present unwritten policy for (MHU/SHU) and (SHU) buildings, are if an inmate requests a copy of a specific statute or case, Then a Staff Paralegal will copy the requested material for that inmate. Some requested material are not always copied, in a timely manner, furthermore, it is necessary for an inmate to know specifically what legal material he wants before a Staff Paralegal can obtain a copy of it. The obvious Problem with that Procedure is that if the inmates does not know the statute or case he needs, then he has no available resources to undertake the necessary legal research to locate any such statute or case. And the imposition of additional hardships that are not shared by the general Prisons Poputation, inference from these factual allegations that the class has demonstrate assertions in this complaint as explanation for the inmate's Placement, resulted in occasional violation of some inmates' constitutional rights under both the Eighth and Fourteenth Amendments.

D. • Defendant's, Carl Danberg, Rick Kearney, Perry Phelp, Michael Costello, are all under the Jurisdiction of operation over Delaware Correctional center (DCC) and are legally responsible for the welfare of all the inmates of (DCC), and the living conditions of the (MHU/SHU) building which persist of some hazardess and unsanitory situations posed on (DCC) individuas housed in the (MHU/SHU) at times. Under these condiction food is also served cold which fills to be unwholesome, with a consistency of calories in meals totaling a whopping 4200 calories per day are brought to their cells. Inmate at (DCC) (MHU/SHU) are Packing on weight with Prison diet of high calories, and lack of exercise is blamed because some inmates are eating everything on the menu.

D-1 • Inmates are forced to be locked down 165 hours out of 168 hours a week with a cellmate, limited amounts of outside the cell recreation periods. These inmates are forced into a situation that could Pose as hazardess to them where they may have to use the lavatory while their cellmate is eating. All of which is a continuous threat to inmates safety. Because of the deterioration of some inmates Physical hygiene, linked to some inmates also having diseases or virussess such as HIV, Hebatitis, TB and Aids, with some virussess being air born. The smell of some inmates who has these virussess of deterioration of declining quality of the diseased inmates, should be deemed unfit and a safety hazardess for in this situation. All of which three meals are served only three feet away from a toilet fixture in the cell. The shower receptacles of dormitories are a haven for dormat bacteria and infectual micro scopic means that have stricken some inmates with bacteria flesh eating skin Disease. which cleaning cleanser, Soap balls, Disinfectant, etc. are not being given out to inmate for cleaning their cells to destroy diseased germs in the cells because of the lock down. Violence is linked to all of because of somes Physical Problems with hygiene, which Posess a safety hazard due to the mental health of some

(3)

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

(1.) JOHN C. JOHNSON    279192
(2) WILLIAM GREGORY  411406
(3.) DAYMIEN J. ROBERTS  374421
(4) BAYANT BANKS    218687
(5.) RONALD F. BROOKS    294765
(6.) CARLOS JACKSON    273677
(7) FENEL BAINE    450212
(8) JOHN FOLKS    126234
(9) BRANDON OWENS    501783
(10) CHRIS ROGERS    308180
(11) MICHAEL L. JONES    417267
(12). JAMES CAULK    293676
NAMES of Plaintiff    NUMBERS

VS.

APPLICATION TO PROCEED
WITHOUT PREPAYMENT OF
FEES AND AFFIDAVIT.


CASE NUMBERS


(1). CARL DANBERG
(2) RICK KEARNEY
(3) PERRY PHELPS
(4) MICHAEL COSTELLO
(5) MICHAEL LITTLE
(6) RONALD HOSTERMAN
NAME OF DEFENDANTS

(Exhibit A)

# California State Prisoner Wins $39,011 for Deprivation of Outdoor Exercise During Extended Lockdowns

## *by Marvin Mentor*

On November 8, 2007, a federal jury awarded a California state prisoner $39,011 for injuries he suffered due to being placed in retaliatory extended lockdowns that prison officials initiated following assaults on staff by other prisoners. The lawsuit alleged cruel and unusual punishment resulting from excessive confinement with no outdoor exercise. The jury awarded nominal actual damages, but also sent a message to prison authorities by awarding $39,000 in punitive damages.

Gregory Lynn Norwood, serving a life sentence without parole, and all other prisoners in his general population unit at the Level IV (maximum-security) California State Prison, Sacramento (CSP-SAC) were placed on four extended lockdowns comprising 14 of the 22 months between January 2002 and November 2003. None of the lockdowns arose from individual misconduct or escape attempts; each incident that precipitated a lockdown involved an alleged serious assault on staff by groups of other prisoners.

During the four lockdowns Norwood was released from his two-man cell three times per week for only 5 minutes, to shower. He complained that the extended lack of outdoor exercise caused him physical and psychological injury, including stress, anxiety, depression, headaches and muscle cramps, and that such confinement violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.

Norwood sued the various wardens, associate wardens, captains and other senior staff who had signed off on the lockdowns. He asserted that their reasons for this harsh treatment were purely punitive and retaliatory, and were not based upon continuing safety or security concerns. Particularly compelling in Norwood's complaint was his observation that Administrative Segregation prisoners at CSP-SAC – e.g., those who had seriously misbehaved – continued to receive normal outdoor exercise periods, while general population prisoners did not. Indeed, if a prisoner went to ad seg for assaulting staff he continued to receive exercise periods, but if subjected to a general lockdown he was denied all outside yard access. After Norwood filed suit he was transferred to another Level IV prison at Tehachapi, California. This rendered his request for injunctive relief (the opportunity for outdoor exercise) moot.

The court reviewed all four lockdowns at CSP-SAC and determined there was no apparent justification for their continuation once the perpetrators involved in the staff assaults had been isolated. The district court denied the defendants' motion for summary judgment based upon qualified immunity, due to common knowledge of the damaging effects on human beings resulting from an extended denial of fresh air and exercise.

The matter proceeded to a jury trial on Norwood's Eighth Amendment claim for unspecified general damages for pain and suffering, plus punitive damages. While the court issued a comprehensive pre-trial order limiting the witnesses to be called, it issued a writ of habeas corpus ad testificandum for a prisoner representative from the CSP-SAC Inmate Advisory Council to appear for Norwood. Thirty-five staff members were called as witnesses for the defendants.

Following a five-day trial, the jury found for Norwood and against every named defendant in each of the four lockdown-related claims, awarding $11 in nominal damages for actual injuries and a total of $39,000 in punitive damages. Norwood had represented himself throughout the entire case until the third day of trial, when attorney Carter White and two law students from the King Hall Civil Rights Clinic of the University of California, Davis, entered the case on his behalf.

On March 11, 2008, the district court awarded attorney fees and costs to White and the two law students, Erin Haney and Nagmeh Shariatmadar. A total of $23,875.55 was awarded in combined fees and costs. Importantly, the court exercised its discretion and ruled that Norwood would only have to contribute $2.75 (25% of the nominal damage award of $11) toward the attorney fees under the fee-shifting provisions of the PLRA [42 U.S.C. § 1997e(d)(2)].

See: *Norwood v. Alameida*, U.S.D.C. (E.D. Cal.), Case No. 2:03-cv-2554-GEB-GGH-P (Verdict Form, Nov. 8, 2007; Order, March 11, 2008). The documents are posted on PLN's website.

(Exhibit B)



Today's Detainee Menu

LUNCH

DINNER

AP/BRENNAN LINSLEY

An example of a detainee's choices for a day's meals at Guantanamo Bay, Cuba. Many days the meals total 4,200 calories.

# Detainees pack on weight with prison diet

## High calories, lack of exercise blamed

By MICHAEL MELIA
Associated Press

SAN JUAN, Puerto Rico — A high-calorie diet combined with life in the cell block – almost around the clock in some cases – is making detainees at Guantanamo Bay fat.

Meals totaling a whopping 4,200 calories per day are brought to their cells, well above the 2,000 to 3,000 recommended for weight maintenance by U.S. government dietary guidelines. And some inmates are eating everything on the menu.

One detainee has almost doubled in weight, to 410 pounds, said Navy Cmdr. Robert Durand, spokesman for the detention facilities at Guantanamo, a U.S. Navy station in southeast Cuba.

### Lack of exercise

Human rights groups attribute the weight gain to lack of exercise. They cite accounts of released detainees who complained they were allowed to exercise fewer than three times a week outside their small cells.

But Durand said detainees are simply served a wide variety

The meals include meats prepared according to Islamic guidelines, along with fresh bread, vegetables and yogurt. With nearly all detainees fasting in the daytime during the Muslim holy month of Ramadan, authorities have arranged for a post-sunset meal and a midnight meal. Traditional desserts and honey also are served during the Ramadan observances.

Even two detainees who have been on a hunger strike for more than a year are at "100 percent ideal body weight," from nutrients fed through tubes inserted in their noses, Durand said.

### Calorie intake above the norm

The calorie intake at Guantanamo is well above the norm for federal inmates in the United States, who receive about 2,900 calories a day, said U.S. Bureau of Prisons spokesman Michael Truman. He said weight gain in the civilian system is not widespread and that most inmates "keep themselves in pretty good shape."

Prisoners at Guantanamo who behave well get more exercise time. The most compliant get up to 12 hours a week, Durand said. Guantanamo officials say compliance is gauged solely by whether a detainee follows detention center rules and avoids causing disturbances, and has nothing to do with whether he is providing information to interrogators.

Detainees clashed with guards in May, using fan blades and broken light fixtures as makeshift weapons. Other inmates recently were discovered to be removing springs from sink faucets to use as stabbing weapons, the military says.

# inmate suicides linked to solitary

## Calif., Texas seek to reverse trend

By Kevin Johnson
USA TODAY

The number of suicides in the nation's two largest state prison systems is ticking upward, and authorities in California and Texas are linking the increase to the rising number of inmates kept in solitary confinement.

In California, which has the largest state prison system with about 170,000 inmates, there have been 41 suicides this year, the most in at least six years and a 17% increase from 2005. Although an estimated 5% of California's inmates are housed in solitary confinement — also known as "administrative segregation" — 69% of last year's suicides occurred in units where inmates are isolated for 23 hours a day, according to state Department of Corrections records. About half the suicides this year were in such units.

In Texas' prison system, which has 169,000 inmates, there have been 24 suicides this year, up from 22 in 2005. Most of the inmates who killed themselves were in some form of solitary confinement, says John Moriarty, inspector general for the prison system.

Texas prisons also are reporting a 17% increase in attempted suicides: 652 so far this year, compared with 559 in 2005. The number of attempted suicides this year is the most in nearly a decade, according to state prison records. Statistics on attempted suicides in California prisons were not immediately available.

The figures from California and Texas are fueling a debate over whether solitary confinement is the best way to control or punish violent or dangerous inmates, particularly those who are mentally ill.

More than 70,000 of the 1.5 million inmates in state and federal prisons are kept in isolation, a reflection of get-tough policies designed to separate rival gang members and those who have gotten into fights while behind bars.

Isolated inmates typically have significant restrictions on visitors and get little help in dealing with the psychological problems that can be caused by isolation. They usually are allowed out of their cells for no more than an hour a day to exercise alone; their exposure to TV and reading material also is limited.

"Are we housing the mentally ill in prison facilities?" Moriarty asks. "I think the answer is yes. But I don't know if that's the best place for them to be."

Moriarty, whose office investigates every inmate death in Texas, says stress from isolation and increasing numbers of inmates with long sentences have contributed to the rise in suicides. "Length of sentence is a big factor. There is despair about not getting out."

Thursday, December 28, 2006

# Independent Monitor Issues First Report on Delaware Health Care

## by David M. Reutter

Joshua W. Martin III, the Independent Monitor who is overseeing an agreement between the U.S. Department of Justice (DOJ) and the Delaware Department of Corrections (DDOC), has issued his first semi-annual report. The agreement with the DOJ followed a public outcry that ensued after *The News Herald* published a series of damning articles that detailed the abysmal medical care provided to DDOC prisoners. [See: *PLN*, Dec. 2005, pg. 1; July 2007, pg. 8].

The Monitor retained a team of medical and mental health experts to assist in inspections and making recommendations to help the DDOC come into compliance with adequate medical care practices. The monitoring team made an initial visit to the Delores J. Baylor Women's Correctional Institution (Baylor), Delaware Correctional Center (DCC), Howard R. Young Correctional Institution (Young), and Sussex Correctional Institution (SCI) during the week of May 21, 2007.

The Monitor's first report focused on determining the challenges faced by the

DDOC to achieve "substantial compliance" with the agreement. One year of such compliance will terminate its agreement with the DOJ. Future reports will focus on providing technical assistance to the DDOC and addressing specific areas of concern such as sick call, chronic diseases, reception processing, interfacility processing, medication management, mental health services and other areas covered by the agreement.

The Monitor noted that the DDOC had already made some needed changes. For example, when prisoners return from off-site doctor visits, including visits for specialty consultations, emergency room trips and hospitalizations, they are taken to medical rather than returned to their cells, which allows a nurse to begin facilitating continuity of care.

In regard to a requirement that the DDOC develop and implement a unitary record-keeping system that allows all clinically appropriate documents related to a prisoner's medical and mental health care to be available to the clinician, the Moni-

tor found the DDOC had established an action plan. Such a plan also exists to ensure timely responses for medication and laboratory tests.

It was clear, however, that the DDOC's for-profit medical vendor, Correctional Medical Services (CMS), had no plan to provide adequate staff and training. In fact, the information the Monitor received "tends to indicate that CMS' regional or national management has not been willing to take such measures as offering relatively small increases in pay in order to attract and retain individuals that would be qualified to fill the vacant positions, nor has CMS' regional or national management been particularly supportive of facility-level CMS management regarding staffing concerns."

During the monitoring teams' initial visits, "it became clear that a major area of concern is the absence of experienced leadership." CMS has only a part-time contract monitor who is transitioning from another prison system. The State Director of Nursing position was, and remains, vacant. Additionally, the facility

level Director of Nursing at the Young facility is soon to become vacant. That situation, coupled with the fact that Young's new Health Care Administrator has no correctional setting experience, caused the Monitor to question whether medical care at the facility can be brought into compliance under the DOJ agreement.

The Young facility is of significant concern, as its 1,750 prisoners include both pretrial detainees and sentenced prisoners. Young processes about 60% of all intakes to the DDOC, which causes an additional burden to the prison and medical staff. Since the facility houses a greater number of prisoners than its design capacity, Young already has problems with clinic space and medical equipment. The Warden at Young also noted that the "turnover of CMS leadership positions has been almost constant over the last few years."

Problems with medical screening were found at the Baylor facility, which receives about 70 prisoners per week, and intake examinations occur every day, all day. The screening of detainees who are newly or previously tuberculosis (TB) skin test positive, or who have TB symptoms, was a matter of concern. CMS has no timelines

for obtaining chest X-rays, which should occur within 72 hours of identification of a positive TB test to identify whether the disease is active. CMS policy only requires the health administrator to be notified if the X-ray is not obtained within two weeks.

Additionally, Licensed Practical Nurses (LPN) were doing the medical screening process. The Monitor noted that a registered nurse or clinician should fulfill that function because "LPNs typically do not have appropriate education and training to perform exploration of medical symptoms."

Another problem area was clinical space and equipment. "While the overall sanitation of the facilities was good," the Monitor stated, "the spaces that are used for the provision of medical and mental health services were the least sanitary spaces within the facilities."

Several problems related to clinic space were found at Young. Those problems not only affected privacy issues for prisoners but also the sanitation of the areas. While the clinical areas were cramped, two rooms in Young's East Wing that could be used for examinations either had no medical equipment and supplies

or were filled with boxes of medical files or medical equipment that was not being used. The infirmary at DCC was found to have very poor sanitation.

The Monitor's report touched upon each area of concern between the DOJ and the DDOC. For the most part, the DDOC had an action plan in place. More visits will be made by the monitoring team to assess compliance, and another report is due to be issued in January 2008. The Independent Monitor's report is available on *PLN*'s website. ◼

Source: *First Semi-Annual Report of the Independent Monitor of the Memorandum of Agreement Between the U.S. Dept. of Justice and the State of Delaware, June 29, 2007.*

On August 14, 2007, Los Angeles County settled a lawsuit brought by the family of a mentally ill prisoner who was stomped to death in a holding cell by two prisoners, while guards failed to respond. The $1 million settlement is another increment in the County Jail's $6.5 million in such payments paid in just the first six months of 2007.

Thirty-five year-old county jail prisoner Chadwick Cochran was allegedly slain by two prisoners, Christian Perez and Heriberto Rodriguez on November 15, 2005. Cochran still wore a red I.D. card identifying him as a mental health patient. However, the two assailants believed it meant he was a snitch. Accordingly, when packed together with 40 men (many of whom were "high risk") in a holding cell to eat their dinners, the two gang members first attacked Cochran with their fists and dinner trays, then jumped repeatedly on his head while the others watched. The window on the door of the cell had been painted over, eliminating visual monitoring. Disapproving prisoners tried to yell through the door to get the guards' attention, but

February 2008

for twenty minutes, none responded. The two assailants are awaiting trial and may face the death penalty.

The lawsuit focused on a previous memorandum of understanding signed by the County to provide proper care, treatment and protection of mentally ill prisoners, stemming from deficiencies noted by the Department of Justice in its investigation in 1996. The suit further noted that when Cochran was moved from the mental health care section, he should have been given a new identification card without the telltale red color. Additionally, the complaint alleged that staff failed to do their jobs, leaving the 40 prisoners with no oversight of any kind for over 20 minutes. Violations of the Fourth, Eighth and Fourteenth Amendments were alleged in the 42 U.S.C. § 1983 suit filed in U.S. District Court.

Nonetheless, County Jail officials still didn't "get it." On May 22, 2007, Kurt Kartcher, a known bi-polar prisoner who had strangled a former cellmate at Lancaster State Prison and was removed to county jail for that trial, was taken from the mental health section of the jail (after being cleared by mental health staff) to be closer to

the courthouse, and placed with a cellmate in the Main Jail. After the earlier murder, Kartcher had been single-celled in state prison for obvious reasons. But chagrined state prison officials admitted that they did not forward information on the previous strangulation to county officials when they transferred Kartcher, nor did they mention his original commitment offense, the strangulation murder of a lawyer who had paid him for sex. Once again double-celled in the jail, Kartcher promptly strangled his third victim, cellmate Jose Cruz, to death. Today, Kartcher is belatedly single-celled in the County Jail, awaiting trial on both murders, where he could also face the death penalty, because he was already sentenced to life-without-parole for the murder of his lawyer-lover.

Cruz was the fifteenth Los Angeles County Jail prisoner to be murdered there since 2000. The estate was represented by attorneys Samuel Paz and Sonia Mercado. See: *Moye v. County of Los Angeles,* U.S.D.C. C.D. Cal., Case No. CV05-8807 SSX. ◪

Other source: *Los Angeles Times.*

# from Flesh-Eating Bacteria

The settlement in a prisoner's death from flesh-eating bacteria at Alabama's Mobile Metro Jail now totals $1,825,000.

In September 2007, the City of Mobile agreed to pay $375,000 to settle its part in a lawsuit filed by Dana Carpenter, the ex-wife of James Carpenter, 42, who died at the jail on July 28, 2000. The $375,000 settlement is in addition to a $1.45 million settlement paid in 2003 by then-sheriff Jack Tillman and other county officials.

"I would hope and pray that Ms. Carpenter and her family made a difference by bringing this lawsuit and that this will never happen to anyone else at Mobile Metro Jail," said her attorney, Frank Hawthorne.

Jailers discovered James Carpenter's

body 15 days after he was arrested for loitering, disorderly conduct and resisting arrest. He was shackled and handcuffed to the bed in his cell; medical examiners cited flesh-eating bacteria as the cause of death.

Even though the Metro Mobile Jail is run by the Sheriff's office, Ms. Carpenter's attorneys argued in federal court that the City was also liable for her ex-husband's death because it had a duty to ensure its prisoners received constitutionally adequate treatment.

Ms. Carpenter had originally filed suit against the City, County and State in 2002, but in 2006 U.S. District Judge Brevard Hand ruled that three state officials named in the lawsuit could not be held liable for the County's actions.

Ms. Carpenter's lawyers also not-

ed that her ex-husband never saw a municipal judge during his 15-day imprisonment, despite a law requiring suspects to be arraigned within 72 hours of their arrest. See: *Carpenter v. Tillman,* USDC SD AL, Case No. 1:02-cv-00625-BH-M. ◪

(Exhibit E)

# Flesh-Eating Bacteria Grossly Disfigures Misdiagnosed Washington State Prisoner

### by John E. Dannenberg

A Washington state prisoner who lay for two days in the Stafford Creek Correctional Facility infirmary in agonizing pain, with a rash covering his torso and slowly drifting into septic shock, had been misdiagnosed by infirmary staff as having only an allergic reaction to Robitussin (an over-the-counter cold medicine) and was treated solely with an ice pack, Benadryl and Medrol (an immune suppressant). No antibiotics were administered for the 60 hours he was being literally eaten alive by the bacteria consuming his internal soft tissue, penis, testicles and bones.

Charlie Manning, doing 13 months after a drunken argument with a neighbor, left prison with no penis, one testicle and minus six pounds of pelvic flesh. The sixty-year old Manning, a former house-painter with diagnosed mental illness and an IQ of 78, was at worst a chronic drunk. When he arrived at Stafford Creek in July 2004, he developed an infected hemorrhoid, for which he received no medical attention for two days. By then, he was delusional, in pain, sleeping under his bunk. His genitals were swollen, he was bleeding from his rectum plus had the torso rash and a fever. Over the next two days, his blood pressure dropped as well (to 84/54, from 120/80 when he first arrived).

Stafford Creek's head doctor, Dr. A. Muhammad Khurshid, stood by Manning's bedside for a few hours after he was admitted, but no record of any examination exists. Specifically, no rectal examination was ever performed. Rather, Khurshid adopted a wait-and-see attitude. Two debilitating days later, he observed dead tissue on Manning's penis and open sores on his scrotum, which he finally diagnosed as an infection, and had Manning hospitalized. At Gray's Harbor Community Hospital, doctors diagnosed Fournier's Gangrene, a necrotizing infection of the male genitalia with a known 25% mortality rate. Manning was forced to consent to his own dismemberment by doctors in order to save his life. Over the next week, doctors continued to remove dead tissue to stop the spread of the infection. After four such "debridements," scarring Manning from his ribs to his rectum, doctors fitted him with a replacement penis made from thigh skin. Even after 120 days in the hospital, his surgeries left him horribly disfigured and disabled. A friend described it as "being filleted like a salmon."

Now suing in U.S. District Court (W.D. Wash.), Manning's Seattle attorney Daniel DeLue said his client would never return to normal. Manning is permanently on 60 mg of morphine daily for his unending pain. DeLue and his experts claim that Khurshid's delay in diagnosing Manning's infection was the principal cause of the horrible outcome.

medical treatment to prisoners at ESP, since the facility went without a full-time doctor for almost two years, from 2006 to 2008.

Carter took Riker off all his medications because he felt Riker did not have rheumatoid arthritis, contrary to previous diagnoses by doctors in California. Carter's brazen attitude was further evidenced in the medical file of prisoner Charles Randolph. Carter responded to a medical kite submitted by Randolph on June 14, 2007. In that kite, Randolph asked why he was being switched to the medication lisinopril from atenolol, which he had been taking for years and worked for him. Carter responded that a medical study showed atenolol "increased cardiac chances."

Nevertheless, Carter said he would put Randolph back on atenolol "so that your chances of expiring sooner are increased." Dr. Noel learned that Carter then placed Randolph on the original medication "out of spite" for challenging his decision to switch prescriptions. This was cited as "an excellent example of the overriding ethos of medical care at ESP."

Dr. Noel found the entire medical system at ESP was "broken and dysfunctional." Most of the medical records he received were illegible, incomplete, failed to contain progress notes, had large gaps in treatment, and were missing such things as lab reports and X-rays. He did not believe the 35 cases he reviewed were an aberration.

The ACLU also began an investigation into medical care at the Southern Nevada Women's Correctional Center. The women prisoners there complained of receiving improper prescriptions for psychotic conditions and little preventative dental care. "These are not isolated incidents, but the refrain we have heard from dozens of women," said Lee Rowland, an ACLU attorney in Las Vegas.

Still, Nevada prison officials remained in denial. "We don't have deplorable conditions at these prisons," stated DOC Director Howard Skolnik. "I do know that I have recently been informed through some other auditing that the access to medical care and the quality of care provided by the department meets or exceeds community standards." Dr. Noel, however, found the medical care at ESP "contradicts medical ethics and all community standards of care I know of in this country.

It is certainly contrary to practice in the State of Nevada."

The ACLU provided Dr. Noel's report to Skolnik and Nevada Gov. Jim Gibbons, and in January 2008 asked the state to voluntarily enter into a consent decree to improve medical care for prisoners. The request was rejected. "Ely is a prison. It is not a hospital," said Skolnik. "The operations of an infirmary in a prison are different than working in a hospital." Consequently, on March 4, 2008, the ACLU of Nevada and the ACLU's National Prison Project filed a class action lawsuit against the Nevada DOC due to "a pervasive pattern of grossly inadequate medical care" at ESP.

"The state just hasn't shown a sense of urgency in addressing the crisis at Ely," stated Amy Fettig, a National Prison Project attorney. "They assured us that they were going to carry out far-reaching reforms to address the problems we brought to their attention, but that was months ago and they've made only half-hearted gestures to fix their broken system. We had hoped to avoid litigation but we can't in good conscience wait any longer, with the men at Ely still at such risk."

The lawsuit, filed in U.S. District Court in Reno, is pending class certification. See: *Riker v. Gibbons*, U.S.D.C. (D.Nev.), Case No. 3:08-cv-00115-LRH-VPC.

Apparently prisoners are not the only ones who have suffered as a result of in-adequate care at ESP. Former ESP nurse Lorraine Wilkin, quoted earlier describing the deteriorating medical condition of Patrick Cavanaugh, was fired in February 2007. She filed suit in federal court on April 8, 2008, alleging retaliation by DOC staff and ESP's former physician, Dr. Stephen MacArthur, for her disclosure of "drastic malpractice intentionally inflicted upon prisoners held at Ely State Prison." She has also raised claims of racial discrimination, sexual harassment and medical malpractice. See: *Wilkin v. State of Nevada*, U.S.D.C. (D.Nev.), Case No. 3:08-cv-00187-LRH-RAM.

Space limitations preclude giving justice to the gross suffering and deliberate indifference to serious medical needs detailed in Dr. Noel's 21-page report. In many years of writing for *PLN*, this author has read horrendous accounts of medical care in various state prisons. After examining the report discussed here, even as a layman I must concur with Dr. Noel's conclusion quoted at the beginning of this article.

Dr. Noel's report, titled "Report prepared for the National Prison Project of the ACLU: Review of Medical Records from Ely State Prison," released on December 6, 2007, is available on *PLN*'s website. ◄

Additional Sources: *ACLU press releases, Los Angeles Times, Ely Times, Las Vegas Sun*

JTVCC James T. Vaughn Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 06/26/2008

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name** : JOHNSON, JOHN C J | **SBI#** : 00279192 | **Institution** : JTVCC |
| **Grievance #** : 162036 | **Grievance Date** : 06/04/2008 | **Category** : Individual |
| **Status** : Non Grievable | **Resolution Status** : | **Resol. Date** : |
| **Grievance Type:** Classification | **Incident Date** : 06/04/2008 | **Incident Time :** |
| **IGC** : Dutton, Matthew | **Housing Location** : Bldg 21, Upper, Tier C, Cell 8, Top | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate Claims: I am grieving that DCC retained a discretitional point system strickening inmate of earned good time and of fairness with a punishment synonymous to the harshness of double jeopardy. This point system enables inmates from going to a lesser restrictive unit to receive any kind of treatment do to a significant breakdown in classification and the point system. Rehabilitation resources, educational achievements and mental health programming are all out of reach and the social workers appearance is basically non-existed to the needs of the confined inmates at the SHU and MHU to explain our needs for rehabilitation.

**Remedy Requested** : Inmate Action Requested: To stop the unfairness of the conditions we experienced, and wickedness towards the mind state of the rights inmates are entitled to by the US constitutions.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** NO | **Date Received by Medical Unit :** |
| **Investigation Sent :** | **Investigation Sent To** : |
| **Grievance Amount :** | |

(3)

JTVCC James T. Vaughn Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 06/26/2008

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| Offender Name : JOHNSON, JOHN C J | SBI# : 00279192 | Institution : JTVCC | |
| Grievance # : 162036 | Grievance Date : 06/04/2008 | Category : Individual | |
| Status : Non Grievable | Resolution Status: | Inmate Status : | |
| Grievance Type: Classification | Incident Date : 06/04/2008 | Incident Time : | |
| IGC : Dutton, Matthew | Housing Location :Bldg 21, Upper, Tier C, Cell 8, Top | | |
| INFORMAL RESOLUTION | | | |

Offender's Signature:_____

Date            :_____

Witness (Officer)   :_____

JTVCC James T. Vaughn Correctional Center                    Date: 06/26/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

**Offender Name :** JOHNSON, JOHN C J          SBI#          : 00279192          **Institution**      : JTVCC

**Grievance #**    : 162036                **Grievance Date** : 06/04/2008        **Category**      : Individual

**Status**         : Non Grievable            **Resolution Status :**                    **Inmate Status :**

**Grievance Type:** Classification          **Incident Date**    : 06/04/2008      **Incident Time :**

**IGC**          : Dutton, Matthew        Housing Location : Bldg 21, Upper, Tier C, Cell 8, Top

IGC

**Medical Provider:**                    Date Assigned

**Comments:**

This grievance is being returned because:

This issue has been defined as non-grievable in accordance with DOC Policy 4.4.
Classification Action.

[ ] Forward to MGC          [ ] Forward to Medical Provider          [ ] Warden Notified

[ ] Forward to RGC          Date Forwarded to MGC :

[ ] Offender Signature Captured          Date Offender Signed          :

JTVCC James T. Vaughn Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 06/26/2008

DCC **Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 06/02/2008

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | | | | |
|---|---|---|---|---|---|---|
| **Offender Name :** JOHNSON, JOHN C J | | **SBI#** | : 00279192 | **Institution** | : DCC | |
| **Grievance #** : 160063 | | **Grievance Date** : 05/08/2008 | | **Category** | : Individual | |
| **Status** : Non Grievable | | **Resolution Status :** | | **Resol. Date** : | | |
| **Grievance Type:** Recreation | | **Incident Date** : 05/08/2008 | | **Incident Time :** | | |
| **IGC** : Dutton, Matthew | | **Housing Location :** Bldg 21, Upper, Tier C, Cell 8, Top | | | | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** (appeal of Grievance, that is suppose to be Non Grievable) The American Correctional Association standard for adult correctional Institutions standard which requires a minimum of one hour per day outside the cell exercise for SHU or solitary confinement, which med/ high is the same thing only with a cell mate which violate my right amendment do to the amount of recreation afforded to me, as the same as Max, 3 hors a week is unconstitutional by prison law. This cruel and unusual punishment need to be looked and the inmate in SHU/MHU should receive more out of the cell recreation!

**Remedy Requested** : For this unconstitutional cruel and unusual punishment and due process violation to be look at for adequate relief.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** NO      **Date Received by Medical Unit :**

**Investigation Sent :**      **Investigation Sent To** :

**Grievance Amount :**

**Page 1 of 4**

DCC  **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 06/02/2008

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| **Offender Name** : JOHNSON, JOHN C J | **SBI#** : 00279192 | **Institution** : DCC | |
| **Grievance #** : 160063 | **Grievance Date** : 05/08/2008 | **Category** : Individual | |
| **Status** : Non Grievable | **Resolution Status:** | **Inmate Status :** | |
| **Grievance Type:** Recreation | **Incident Date** : 05/08/2008 | **Incident Time :** | |
| **IGC** : Dutton, Matthew | **Housing Location :** Bldg 21, Upper, Tier C, Cell 8, Top | | |

**INFORMAL RESOLUTION**

Offender's Signature:_____.

Date            :_____

Witness (Officer)  :_____

**Page 2 of 4**

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** JOHNSON, JOHN C J | **SBI#** : 00279192 | **Institution** : DCC |
| **Grievance #** : 160063 | **Grievance Date** : 05/08/2008 | **Category** : Individual |
| **Status** : Non Grievable | **Resolution Status :** | **Inmate Status :** |
| **Grievance Type:** Recreation | **Incident Date** : 05/08/2008 | **Incident Time :** |
| **IGC** : Dutton, Matthew | **Housing Location :** Bldg 21, Upper, Tier C, Cell 8, Top | |

### IGC

**Medical Provider:**                                   **Date Assigned**

**Comments:**

This grievance returned because: Duplicate Grievance: #155488. Their is no appeal on a Non-Grievance issue.

[ ] **Forward to MGC**          [ ] **Forward to Medical Provider**          [ ] **Warden Notified**

[ ] **Forward to RGC**          **Date Forwarded to MGC :**

[ ] **Offender Signature Captured**          **Date Offender Signed**          :

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

(Exhibit H)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: _D.C.C._   DATE: _March 25-2008_

GRIEVANT'S NAME: _William Gregory_   SBI#: _411406_

CASE#: _155488  Group_   TIME OF INCIDENT: _Ongoing / All the time_

HOUSING UNIT: _21 SHU/MHU_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_I'm Grieving the amount of recreation afforded to me, 3hrs a
week is unconstitutional By the "American Correctional Association,
standard for Adult Correctional Institutions, standard 3-4253 (1990)
Which requires a minimum of one hour per day outside the cell exercise
for SHU or Solitary confinement inmates Or no less than 5 days per week
of one hour outside exercise for inmates in disciplinary detention. This is
by the U.S. Dept of Justice, federal standard for prisons & Jails 11.19 (1980)
I already spoke with the Deputy Warden David Pierce he claims its wrong
And he use to work in the law Library. I have been getting 3hrs a week
since Ive been in the SHU/MHU from Jan 08 until Now March 08_

ACTION REQUESTED BY GRIEVANT: _For the cruel & unusual punishment to stop
And recieve the proper Amount of recreation_

_____

_____

GRIEVANT'S SIGNATURE: _Mr. William Gregy_   DATE: _____

WAS AN INFORMAL RESOLUTION ACCEPTED?  _____(YES)  ✓(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____   DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

(Exhibit I)

CL4

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C                        DATE: 3-28-08

GRIEVANT'S NAME: Michael Jones      SBI#: 417267

CASE#: 155488   Group             TIME OF INCIDENT: E All the time

HOUSING UNIT: 0 ~~#####~~ SHU/MHU 21 D U8

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Im grieving the amount of recreation afforded to me 3hrs a week is unconstitutional.
By the "America Correctional Association, standard for Adult Correctional Institutions
standard 3-4258(1990) Which requires a minimum of one hour per day outside
the cell exercise for SHU or Solitary Confinement inmates in disciplinary detention.
This is by the U.S Dept of Justice, federal standard for prisons e Jails § 11.19 (1980)
Ive been getting 3hrs a week since Sept. 06 until now and sometimes do to
institutional lock down 2 hrs a week this is Cruel & Unusual treatment

ACTION REQUESTED BY GRIEVANT: That the Warden, Deputy Warden, Head of Security
Commissioner of Jails be notified that this is wrong and Iredieve the proper
treatment Isuppose to recieve

GRIEVANT'S SIGNATURE: [signature]        DATE: 3-28-08

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)   __✓__(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____        DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
     GRIEVANT

April '97 REV

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** JOHNSON, JOHN C J | **SBI#** : 00279192 | **Institution** : DCC |
| **Grievance #** : 155488 | **Grievance Date** : 03/30/2008 | **Category** : Group |
| **Status** : Non Grievable | **Resolution Status :** | **Resol. Date** : |
| **Grievance Type:** Recreation | **Incident Date** : 03/30/2008 | **Incident Time :** |
| **IGC** : Dutton, Matthew | **Housing Location :** Bldg 21, Upper, Tier C, Cell 8, Top | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:**   The American Correctional Association standard for adult Correctional Institutions standard, which requires a minimum of one hour per day outside the cell exercise for SHU or solitary confinement, which med/high is the same thing only with a cell mate which violate my right amendment do to the amount of recreation afforded to me, as the same do to the amount of recreation afforded to me, as the same as Max, 3 hrs a week is unconstitutional by Prison Law.

**Remedy Requested**   :   To stop the cruel and unusual punishment and to receive more out of the cell recreation.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| Inmate | 00411406 | GREGORY, WILLIAM |
| Inmate | 00417267 | JONES, MICHAEL L |
| Inmate | 00374421 | ROBERT, DAYMIEN J |

### ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** NO               **Date Received by Medical Unit :**

**Investigation Sent :**               **Investigation Sent To**   :

**Grievance Amount :**

**DCC Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 04/10/2008

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : JOHNSON, JOHN C J | SBI# : 00279192 | Institution : DCC |
| Grievance # : 155488 | Grievance Date : 03/30/2008 | Category : Group |
| Status : Non Grievable | Resolution Status: | Inmate Status : |
| Grievance Type: Recreation | Incident Date : 03/30/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location :Bldg 21, Upper, Tier C, Cell 8, Top | |
| INFORMAL RESOLUTION | | |

Offender's Signature:_____

Date : _____

Witness (Officer) : _____

Page 2 of 4

DCC  **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

**Date:** 04/10/2008

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** JOHNSON, JOHN C J | **SBI#** : 00279192 | **Institution** : DCC | |
| **Grievance #** : 155488 | **Grievance Date** : 03/30/2008 | **Category** : Group | |
| **Status** : Non Grievable | **Resolution Status :** | **Inmate Status :** | |
| **Grievance Type:** Recreation | **Incident Date** : 03/30/2008 | **Incident Time :** | |
| **IGC** : Dutton, Matthew | **Housing Location :** Bldg 21, Upper, Tier C, Cell 8, Top | | |

### IGC

**Medical Provider:**              **Date Assigned**

**Comments:**

This grievance returned because: Requests are not processed through the grievance procedure.  SOP and housing rules state inmates are required to receive three hours a week.

[ ] Forward to MGC              [ ]  Forward to Medical Provider          [ ]  Warden Notified

[ ] Forward to RGC              Date Forwarded to MGC :

[ ] Offender Signature Captured       Date Offender Signed       :

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

**FORM #584**

**GRIEVANCE FORM**

**FACILITY:** _DDC_

**DATE:** _3-31-08_

**GRIEVANT'S NAME:** _DAYMIEN ROBERTS_   **SBI#:** _00374421_

**CASE#:** _155488_ _Group_   **TIME OF INCIDENT:** _ON going / All the time._

**HOUSING UNIT:** _21-C-L8_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

I am Grieving the unconstitutional amounts of
recreation afforded to me, weekly. For shu or solitary
confinement inmates are no afforded No less then 3 days
per week of one hour out side exercise for inmates in
disciplinary detention which is Max, The MHU is close confined/high
and we are forced fased with the something amount of
recreation afforded to But we'er look in with a celly
which for more than 24 and 1 hour is a violation eight
amendment. And its unconstitutional by the American Correctional
Assosiation Standard for Adult correctional Institutions Standard 3428 (1990).

ACTION REQUESTED BY GRIEVANT: _Recreation to be longer_
_and for the cruel and unusual punishment to_
_Stop._

**GRIEVANT'S SIGNATURE:** _Daymien Roberts_   **DATE:** _3-31-08_

**WAS AN INFORMAL RESOLUTION ACCEPTED?** _____(YES) _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

**GRIEVANT'S SIGNATURE:** _____   **DATE:** _____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

**cc: INSTITUTION FILE**
   **GRIEVANT**

**April '97 REV**

**FORM #584**

**GRIEVANCE FORM**

FACILITY: _Delaware Correctional Cntr_ DATE: _11-06-07_

GRIEVANT'S NAME: _Dajmien T Roberts_    SBI#: _00324421_

CASE#: _145476_    TIME OF INCIDENT: _____

HOUSING UNIT: _21-C-28_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_I Inmate/Roberts, is grieving the conditions of my_
_housing location at this current time. I'm locked in_
_my cell for 47 hours straight, then given 1 hour of_
_recreation. I'm being housed with a celly in these_
_maximum conditions with is against my_
_constitutional right as a inmate of the Delaware_
_Correctional Center. This current process is extensive_
_of by being locked in for 47 hours straight with a_
_celly is hazardous to my hygiene physically & is_
_a set up for violence & other safety hazards._

ACTION REQUESTED BY GRIEVANT: _I Inmate/Roberts, action of_
_request is that if I'm to be placed in maximum_
_security double celling, that I should be let out_
_of my cell twice a day for recreation as well as_
_other inmates why are placed & housed with a celly._

GRIEVANT'S SIGNATURE: _Dajmien Roberts_    DATE: _11-6-07_

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.
RECEIVED

cc: INSTITUTION FILE
    GRIEVANT    NOV 14 2007

    IM GRIEVANCE OFFICE    April '97 REV

**FORM #584**

**GRIEVANCE FORM**

FACILITY: Delaware Correctional Center    DATE: 9-14-07

GRIEVANT'S NAME: John C. Johnson    SBI#: 00279192

CASE#: 142163    TIME OF INCIDENT: 11-27-06

HOUSING UNIT: 21-C-08

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

I, Inmate/Johnson, is grieving the dangerous conditions of my confinement. Do to the fact that Im placed in Maximun security & being doubled celled in a cell with a another Inmate, designed for one prisoner. We are locked in the cell for 47 hours and 1 hour out for recreation. The amount of lock in time is extensive, and with little out of cell activity, could lead to deteriorated physical hygiene, Violence and other safety hazards dealing with the mental of a person.

ACTION REQUESTED BY GRIEVANT: I, Inmate/Johnson, Action of request is that if Im to be placed in maximun security double celling that I should be let out of my cell twice a day for out of the cell activity. Thats my resolution for this Grievance.

GRIEVANT'S SIGNATURE: John C. Johnson    DATE: 9-14-07

RECEIVED

WAS AN INFORMAL RESOLUTION ACCEPTED? _____ (YES) _____ (NO)    SEP 19 2007

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)    Inmate Grievance Office

GRIEVANT'S SIGNATURE: _____    DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

(Exhibit M)

(19)

DU8

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C.                    DATE: 1·6·06

GRIEVANT'S NAME: William Gregory      SBI#: 411406

CASE#: 22670                         TIME OF INCIDENT: 1·6·06

HOUSING UNIT: ~21~ DU8 - MHU/SHU

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

The dirty **handcuffs & shackles** gave me a rash on My wrist in Ankles. The sheets the C.O's have been giving out had brown stains, And dryied blood stains on them. The Toe Nail clipper was soaking in dirty Blue water with all Kinds of toe Nails & bacteria Floating Around in the JAR. The CO's have 196 people sharing one toe Nail clipper when they sell them in comissary. The showers in the buid'n are all cold, and the C.O's Dont spray them w/ No type of disinfectant spray, nor gvt it to the tier man who cleans The shower. They Dont offer NO type of educationl programs for me Nor the 195 other people in this unit. Nor mental health help which I asked for before. I cant earn No good time by the New classification system. It prohibits all inmates in my situation from going to a less restrictive unit. to recieve this treatment. And when the C.O's bring the Food to The Housing Unit All the trays Are NOT Covered And they Pass An outside walk way & give me a legal call. I requested it as several times.

ACTION REQUESTED BY GRIEVANT: For the co's to clean the handcuffs & shackles. Give out clean sheets & pillow cases. Give the tier Man disinfectant to clean the showers. give Mental Health counseling to me & Afford some educational programs also. Take the Double Jeparty out of the New classification system. Cover up all the food when they bring it to the building. And give me A legal call, to call My attorney stephen Patrizio. And Fix the showers.

GRIEVANT'S SIGNATURE: Mr. William Gregory    DATE: 1·6·06

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____ (YES)   ✓ (NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____    DATE: _____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**
JAN 0 9 2006
Inmate Grievance Office

April '97 REV

28

(Exhibit "M 1")

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C.                    DATE: 9·8·05

GRIEVANT'S NAME: William Gregory    SBI#: 411406

CASE#: 17518                        TIME OF INCIDENT: 9.8.05

HOUSING UNIT: SHU/MHU 21 DU8

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Im Grieving the amount of recreation afforded to us inmates, 3hrs a
week is unconstitutional. By the "American Correction" Association,
Standard for Adult Correctional Institutions standard 3-4258 (1990).
Which requires a minimum of one hour per day outside the cell exercise
for SHU or solitary confinement inmates. Or No Less than 5 days per week
of One hour outside exercise for inmates in disciplinary detention. This is
by the U.S. Dept of Justice, Federal Standard for prisons & Jails §11.19 (1980)
I already spoke with the Deputy Warden David Pierce, he claims its wrong
And he use to work in the Law Library. I have been getting 3hrs a week on
both my stays in the SHU from Jan. 03 - July 03 & Jan. 31. 2004 - (Present) todays date is
9.8.05.
ACTION REQUESTED BY GRIEVANT: For the cruel & unusual punishment to stop
And recieve the proper amount of recreation

cc: File/Lawyer
GRIEVANT'S SIGNATURE: Mr. William Gregory    DATE: September 8. 2005

WAS AN INFORMAL RESOLUTION ACCEPTED?    ____(YES)  ✓ (NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

April '97 REV                    SEP 13 2005

Inmate Grievance Office

**FORM #584**

**GRIEVANCE FORM**

10-25-05

**FACILITY:** D.C.C.    **DATE:** 7-20-05

**GRIEVANT'S NAME:** William Gregory    **SBI#:** 411406

**CASE#:** 19183    **TIME OF INCIDENT:** 7-20-05

**HOUSING UNIT:** 21 D·L·8

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

iN Bldg·21 on D-tier and EVery other tier, On a Regular Basis on
the 4-12 shift there's become a routine of us being denied
recreation For the "3" HOURS we are suppose to be granted.
THEy Sgt. who runs the building ARE NOT Making up the recreation
just leaving us inmates to suffer extremly cruel & unusal punishment
by being locked in the cell 166 hours a week.

ACTION REQUESTED BY GRIEVANT: To recieve "3" Hours of recreation A week.
And have the Correction officers Use sunday to make-up all
missed recreation.

GRIEVANT'S SIGNATURE: Mr. William Gregory    DATE: 7.20.05

WAS AN INFORMAL RESOLUTION ACCEPTED?    ____(YES)    ✓(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

JUL 2 6 2005

Inmate Grievance Office

April '97 REV



(Exhibit M-3)

## CORRECTIONAL MEDICAL SERVICES

### LAB/X-RAY RESULT

Patient Name: _Gregory, William_                    Bldg 21

SBI #: _411706_        Housing: _LC 4_        Date: _7/24/08_

The Medical Unit has received and reviewed the following results:

_✓_ Lab Work

_____ X-Ray Study

[✓] Based on evaluation, your results were within acceptable limits.

[ ] Based on evaluation, you will be scheduled for a follow-up
appointment. (Note: If you are released before your next visit, please follow-
up with your private physician.)

Healthcare Worker Signature: _____

_Copy to Mr. Gregory 7/24/08 )_

6/3/06

(27)

(Exhibit M 4)

# Bay*health*
## *Medical Center*

**Kent General Hospital**
*640 S. State St., Dover, Delaware 19901*

**Milford Memorial Hospital**
*21 W. Clarke Ave., Milford, Delaware 19963*

## Fractured Jaw Diets

**There are 3 levels of the fractured jaw diet:**

**Clear liquid fractured jaw diet**
**Full liquid fractured jaw diet**
**Blenderized liquid diet**

**The physician will specify which level is appropriate for the patient.**

**All foods at EACH level MUST be able to
be consumed with a <u>straw</u>**

## Clear Liquid Fractured Jaw

**Foods Allowed**

Broth or Bouillon
Clear non-acidic juices (apple)
Carbonated soda
Tea/ Coffee
Boost Breeze supplement

**Foods NOT Allowed**

JELLO*
Italian Ice
Popsicle
Acidic juices
 (orange, pineapple,
 cranberry)

**\*JELLO IS NOT ALLOWED AT ANY TIME**
*(jello can be served warm as a liquid)*



**Bay*health***
*Medical Center*

**Kent General Hospital**
640 S. State St., Dover, Delaware 19901

**Milford Memorial Hospital**
21 W. Clarke Ave., Milford, Delaware 19963

## Sample Menu for Clear Liquid Fractured Jaw Diet

## (all foods need to be consumed through a straw)

| Breakfast | Lunch | Dinner |
|---|---|---|
| Clear Juice | Clear Juice | Clear Juice |
| Broth or Bouillon | Broth or Bouillon | Broth or Bouillon |
|  | Carbonated soda | Carbonated soda |
| Tea/coffee | Tea/coffee | Tea/coffee |
| Sugar | Sugar | Sugar |
| Boost Breeze | Boost Breeze | Boost Breeze |
|  |  |  |
| **Mid-morning Snack** | **Mid-afternoon Snack** | **Evening Snack** |
| Clear soda or Clear juice | Clear soda or clear juice | Clear soda or clear juice |

*send several straws with each meal



**Bay*health***

*Medical Center*

**Kent General Hospital**
640 S. State St., Dover, Delaware 19901

**Milford Memorial Hospital**
21 W. Clarke Ave., Milford, Delaware 19963

## Full Liquid Fractured Jaw

**Foods Allowed**

**Foods NOT Allowed**

### Must be POURABLE and be able to
### be consumed with a straw!

**JELLO\***

All items on clear liquid fractured jaw diet
Milk
Thin sherbet shake
Thin milkshake
Strained or Blenderized cream soups (no chunks)
Thinned plain yogurt (flavored with syrup)
Thinned pudding
Nutrition supplements with
 physician order

Popsicle
Italian Ice
Sherbet
Ice cream
Cereal
Regular yogurt
Regular pudding

## \*JELLO IS NOT ALLOWED AT ANY TIME
*(jello can be served warm as a liquid)*

(Exhibit M-8)

**Bayhealth**
*Medical Center*

**Kent General Hospital**
640 S. State St., Dover, Delaware 19901

**Milford Memorial Hospital**
21 W. Clarke Ave., Milford, Delaware 19963

## Blenderized Fractured Jaw Diet
**(Everything needs to be able to be consumed through a straw)**

| Food Group | Recommend | Not Allowed |
|---|---|---|
| **Beverages** | Milk, thin milkshakes, all beverages, commercial nutritional supplements | Thickened milk products; alcohol |
| **Breads/Starch** | **Blenderized/thinned:** breads and crackers, cereals, mashed /creamed potatoes, rice, pasta | All others |
| **Desserts** | **Blenderized/thinned:** custards, pudding, milkshakes, sherbet shakes, cake/pie (as able) | All others |
| **Fats** | Butter or fortified margarine, cream/cream substitutes, gravy, whipped topping | All others |
| **Meats and meat substitutes** | **Blenderized/thinned:** meats, poultry, fish, beans, eggs, cheese sauce; smooth peanut butter | All others |
| **Soups** | **Strained or blenderized** soups, broth, or bouillon | All others |
| **Sweets** | Jelly, honey, sugar/sugar substitute, syrup | All others |
| **Vegetables** | Vegetable juices, **blenderized/ thinned** vegetables (no seeds-very fibrous vegetables may be difficult to blenderize) | All others |
| **Miscellaneous** | Seasonings and spices as desired | Nuts, coconut, foods with seeds |

Appendix E

## DELAWARE CORRECTIONAL CENTER ---- MEMORANDUM

TO: Inmate _Johnson, John_ , SBI# _279142_ , Housing Unit _MH2_
VIA: Counselor _____
FROM: I.B.C.C. _221 08_
DATE: _____
RE: Classification Results

Your M.D.T. has recommended you for the following: _Medium, Credences,_
_MHU Programs, MH_

The I.B.C.C.'s decision is to:
___ Approve _MAXZI Approved_
___ Not Approve _____
___ Defer _____
___ Recommend _____
___ Not Recommend _____

### BECAUSE:

___ Lack of program participation          ___ Time remaining on sentence
___ Pending disciplinary action            ___ Prior failure under supervision
___ Gradual phasing indicated              ___ Poor institutional adjustment
___ Open charges                           ___ Serious nature of offense
___ Prior criminal history
___ Failure to follow your treatment plan in that you _____

___ You present a current and continuous danger to the safety of staff, other inmates, or the good
order of the Institution. Explanation: _____

**OTHER:** _____

### ADDITIONAL COMMENTS:

___ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

Copy to: Classification
Inmate
Institution File

Form #456
Revised 11/97



Exhibit N-1

**DCC Education**

# Notification

**To:**     John Johnson / Bldg 21

**SBI #:**   00279192

**From:**   D. Miller / B-bldg

**Date:**   5/16/2008

**Re:**     BCI Request

C - U - 8

Mr. Johnson,

Mr. Hosterman, Treatment Director, has informed me that students housed in the MHU or SHU will not be able to receive correspondence materials.  According to his direction, I will not be able to approve your enrollment into Blackstone Career Institute until you have been moved back to the compound. Please contact me at that time so that we can move forward in enrolling you.

Thank you.





# BLACKSTONE CAREER INSTITUTE

1011 BROOKSIDE ROAD, SUITE 300, P.O. BOX 3717, ALLENTOWN, PA 18106-3717

May 19, 2008

John C. Johnson 279192
Delaware Correctional Ctr. 21-C
1181 Paddock Rd.
Smyrna DE 19977

Prospect #227260

Dear John:

Thank you for your recent correspondence.

It is the responsibility of the student to obtain the proper approval for the program before enrolling. If your facility requires that you have your materials shipped to the Education Department, Blackstone must comply with that request. Otherwise, all your course materials will be returned to us.

We do not ship material via Certified Mail or require signatures since most facilities refuse to do this and will return the material.

If you do decide to enroll, please submit the proper down payment. We will keep your enrollment agreement on file until you notify us of your decision. Please contact us if you have any questions.

Sincerely,

Stacy Feifel
Student Services



A Direct Learning Systems School

Phone: 610-871-0031 • 800-826-9228 • Fax: 610-871-0034
email: info@blackstone.edu • www.blackstone.edu

35



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
245 McKEE ROAD
DOVER, DE 19904

Carl C. Danberg
Commissioner

(302) 739-5601
Fax:   (302) 739-8221

March 28, 2008

William Gregory
SBI# 411406
Delaware Correctional Center
1181 Paddock Road
Smyrna, De 19977

Dear Mr. Gregory,

I am in receipt of your letter of March 13, 2008 regarding the conditions of your confinement in MHU/SHU.

The way to obtain more privileges is to obey institutional rules, cooperate with staff, and participate in programs for your own benefit. If you address your behavior and the causes of your incarceration you will earn a lower classification.

Sincerely,

Carl C. Danberg,
Commissioner

Trk# 753

CCD:lmd



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

## MEMORANDUM

TO:      IM William Gregory SBI# 411406 MHU 21 CL4T

FROM:    Deputy Warden Pierce

DATE:    October 10, 2006

RE:      Hot Water, Cleaning Supplies, and Mail

I received your grievance dated September 19, 2006, regarding hot water and cleaning supplies in your building and have forwarded your concerns to S/Lt. Profaci for her action. In regards to your mail, your concerns have been forwarded to Support Services Officer Powell for her response to you.

DP/dc
Attachment
cc:      Support Services Office Powell
         S/Lt. Profaci
         File

(37)

Sept. 19, 2006

TO: Dep. Warden I
David Pierce

RECEIVED
SEP 2 1 2006
DEPUTY WARDEN I

My name is William Gregory # 411406. I'm writing due to
A few issues I hope you can resolve or give me an explaination As to why
these problems Are occurring, And who Do I nedd to contact in order to get 'em
Addressed timely.

1. In bldg. 21 on "C" teir All the showers Are cold. There hasn't been Any hot
water Ever since I came on the teir in July. 06. The C.O.'s Also Never have
anything to spray the showers with so The teir-Man can clean them. NO Bleach or
Any other need disinfectant. If possible can you Please see to it we get Hot
water & the proper cleaning Materials for the showers. To Avoid people from catching
Any diseases or severe rashes.

2. I just recieved A notice from the mail room. Stating I can't recieve A
Smooth Magazine which I've been getting for over the past 2yrs here At D.C.C. It
claims the Mag. violates D.C.C. Policy. This occured w/ my King Magazine Also
you can look at them yourself And there's always tasteful pictures displayed in both.
I would like to read this New Policy if possible.

Mr. Pierce Are you aware that this New policy which must also Affect personal
pictures, Promotes Homosexuality by telling the inmates I don't want you to have
No mags. w/ women nor photos & just 'stay in your cell 165 hrs a week' with another
man. I'm NOT A FAGGOT. I'm just stating the obvious. For example look
At what happened to Gary Stewart. These Actions of denying Men's Magazines
promote for tragic inncidents like that to happen Again, from what I heared
was one celly rapes the other, forcing the weaker one to eventually kill the
other to prevent from getting Abused Again. I hope you see the Logic of what
I'm stating. If anything Dont Allow people w/ sexual offenses recieve that type of material

The SHU/MHU in bldg 21. has only "1" Program (cage My Rage) And After that's
completed your not allowed to do it again In order to loose Any Points. The New
classification system found several New ways to ADD points to An inmates level
But DOES NOT Afford Avenues to loose Any. They Even changed it
from 12 months to 18 months A person Must go write up FREE & order to
loose ANY Points Which is totally unfair. I've submitted a grievance About

All the issues listed And have not recieved Any coorespondence
Please Coorespond
Thanks in advance
sincerely Mr. William Gregory
21 C L4

38

# Delaware Center for Justice
### 100 West 10th Street, Suite 905
### Wilmington, DE 19801

## Adult Offender Services Program

**Date: February 9, 2006**

**William Gregory #411406**
**Delaware Correctional Center**
**1181 Paddock Rd**
**Smyrna, DE 19977**

**Dear Mr. Gregory:**

This is to acknowledge receipt of your letter. After careful review of your letter, the following decision has been reached:

- ☐ We do not deal with the issue(s) in your letter
- ☐ We advise you to contact your institutional medical provider
- ☐ Provide additional information on the matter for follow up
- ☐ Contact your Counselor at the institution for help and guidance
- ☐ We will contact you upon further investigation and follow up
- ☐ File a grievance using the internal 4.4 Grievance Procedure
- ☐ Requested information enclosed
- ☐ **Other:  This letter is in receipt of our 1/31/06 meeting.**

   **Unfortunately based on the information previously sent and**
   **discussed in the interview. DCJ will not be able to assist you. The**
   **concern with using only one clipper and having only 3 showers a**
   **week is a security issue.  DCJ doesn't have the ability to challenge**
   **those rules.  Appropriate sanitation materials are being provided**
   **with the use of clippers therefore I am closing you case.**

Thank you for your interest in our agency.

Sincerely,

*Nikita Y. Robins*

Nikita Y. Robins
Case Manager, Adult Offender Services



# Delaware Center for Justice
### 100 West 10th Street, Suite 905
### Wilmington, DE 19801

## Adult Offender Services Program

**Date: December 22, 2005**

**William Gregory #411406**
**Delaware Correctional Center**
**1181 Paddock Rd**
**Smyrna, DE 19977**

**Dear Mr. Gregory:**

This is to acknowledge receipt of your letter.  After careful review of your letter, the following decision has been reached:

☐ We do not deal with the issue(s) in your letter

☐ We advise you to contact your institutional medical provider

☐ Provide additional information on the matter for follow up

☐ Contact your Counselor at the institution for help and guidance

☐ We will contact you upon further investigation and follow up

☐ File a grievance using the internal 4.4 Grievance Procedure

☐ Requested information enclosed

☐ **Other: I have received a referral letter from the ACLU and will be scheduling an interview in the near future.**

Thank you for your interest in our agency.

Sincerely,

Nikita Y. Robins
Case Manager, Adult Offender Services

# aclu delaware

December 7, 2005

Mr. William Gregory
Delaware Correctional Center
SBI#411406, MHU 21-D-18
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Gregory:

The ACLU has referred your case to the Delaware Center for Justice who can assist us in matters involving prison conditions or medical grievances. If they are able to intervene, they will require permission from you. I enclose a consent form which you must sign and date and return to that office.

I understand that your situation involves unhealthy conditions in the MHU housing units. You indicated there is limited outside activity and no regular shower facility. I am uncertain if the Delaware Center for Justice can assist since your situation involves a housing unit. I have requested some input from the Delaware Center for Justice and will ask that office to contact me should they be unable to assist us.

If you are able, I ask that you enclose a copy of all grievances you have filed along with a detailed statement of the facts surrounding your complaint. Send this information along with the enclosed consent form to the Delaware Center for Justice at 100 West 10th Street, Suite 905, Wilmington, DE 19801. If they are able to assist you, they will contact you.

Thank you for contacting the ACLU.

Sincerely,

Diane Winters
Diane Winters
Intake Representative
Cc: Delaware Center for Justice

To ACLU                                October   2005
   100 West 10th Street
   Suite 309
   Wilmington De 19801

        I'm writing to find out if anyone at
the ACLU can help assist me to address the
cruel & unusual punishment that goes on here at
D.C.C.

    The issue: I'm currently only being allowed
only 3hrs a week of outside the cell exercise, thats
including showers time. Sometimes the C.O.'s who
worked the building like Sgt. Beckles on the 4-12 shift
won't give NO recreation or showers, claiming its
due to security reasons. I filed a grievance,
wrote the counselor, Deputy Warden I "David Pierce, Dep
Warden II "Betty Burris" And warden Carroll. (My only
coorespondence is enclosed.) I tryied to let them
KNOW being locked down 165 hrs a week is not only
bad for health reason with limited showers but also
this causes mental problems to us inmates like
myself. With severe Depression & other issues.
        I also explained the "A.C.A." American
Correctional Association standards for adult
Correctional institutions standard 3-4258 (1990)
Which requires a minimum of one hour per day of
outside the cell exercise for NO less than

(43)



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN I**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

## MEMORANDUM

TO:       IM William Gregory SBI# 411406 MHU 21 DU8B

FROM:   David Pierce, Deputy Warden I

DATE:    September 28, 2005

RE:       Recreation

I received your letter dated September 10, 2005, regarding recreation in the housing unit. The ACA standard is neither a federal law nor a mandate. The federal prison guidelines do not apply in a state prison. I encourage you to work towards a less restrictive classification. Regarding the food deliver complaint I forwarded your letter to S/Lt Profaci.

DP/dc
Attachment
cc:      S/Lt. Profaci
          File

RECEIVED

SEP 1 5 2005

DEPUTY WARDEN I

To Deputy Warden I
David Pierce

September 10, 2005

Im writing in Reguards to the insufficient and illegal amount of Recreation Afforded to SHU And SHU/MHU INmates. As I showed to you when you was on D-tier in bldg. 21 on Sept. 7, 2005. That by the American Correctional Association, standard for Adult Correctional Institutions Standard 3-4258 (1990) Which requires a minimum of one hour per day of outside the cell exercise. Or No Less than 5 days per week of 1hr outside the cell exercise for inmates in disciplinary detention by the U.S. Dept. of Justice, Federal Standard for Prisons & Jails § 11.19 (1980). I know you said you worked in the Law Library before. But this is something you should look to rectify. The time given to us SHU & SHU/MHU inmates causes extreme Mental problems, Health issues. And various other delimmas we face. And On A regular basis The C.O's put there hands on the bottom of the food cart to carry the food up the steps And then pass out the bread with those same gloves on. "C.O. windsor" who was working the 4-12 shift on Sept. 9, 2005 did this. The Sgt. Abernacky (might be mispelled) thought the whole issue was funny. And laughed my complaint off. You said if these issues occur write you or staff Lt. Profaci. So Im doing So. Please coorespond to the matters Mentioned Above.    Thanks in advance

WilliAM Gregory
411405
21 DU8 B

PS I wrote the Warden & Deputy Warden II. About the recreation issue but they didnt coorespond. They Never answer Any of My letters. Only Your sincere enough to Put forth thAt Effort. Thanks.

45

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one): MEDICAL  DENTAL  (MENTAL HEALTH)

Mr. William Gregory

21 C L4

Name (Print) / Housing Location

03 29 80     411406     April 1, 2008

Date of Birth     SBI Number     Date Submitted

Complaint (What type of problem are you having)? I need to see A Mental Health Counselor.. AGAIN B/c I feel Im losing touch w/ reality from being Housed As A SuperMax Housing Inmate for such a long duration of time.

Cont. on back

Mr William Gregory     April. 1. 2008.

Inmate Signature     Date

**The below area is for medical use only. Please do not write any further.**

S: Refer to MH. - 8m/RN 4-3-08 (Copy sent)

O:    Temp:_____   Pulse:_____   Resp:_____   B/P:_____   WT:_____

A:

P:

E:

Provider Signature & Title      (76)      Date & Time

Received 4-3-08; 0900 J. McHenjiern

3/1/99 DE01

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
### FACILITY: DELAWARE CORRECTIONAL CENTER
This request is for (circle one): MEDICAL  DENTAL  MENTAL HEALTH

William Gregory

Name (Print)

21 DUB

Housing Location

3 29 80

Date of Birth

4/1406

SBI Number

7 18 05

Date Submitted

Complaint (What type of problem are you having)? I've been classified to bldg. 22 or 23 And I would like to placed on the waiting List for Any Available groups/Programs that are Afforded to inmates At the Level. I feel being locked down so long is affecting me psychologically. Help!

Mr. William Gregory

Inmate Signature

7.18.05

Date

**The below area is for medical use only. Please do not write any further.**

S:

O:  Temp:____  Pulse:____  Resp:____  B/P:____  WT:____

A:  Mr. Gregory —
Mental health is not able to

P:  offer groups in the MHU environ-
ment at this time. Please pursue it
in the future or move to the compound

E:  for services when your Points allow it.

Provider Signature & Title

8/15/05

Date & Time

3/1/99 DE01

FORM#:

**MED**
**263**

47

(Exhibit P-)

Gov Ruth Ann Minner

This is Inmate William Gregory #411406. Im writing you in regards to the unconstitutional cruel and unusual treatment Ive been recieving for the last 4 years and 2 months. This jail D.C.C in Smyrna, Del isnt following thier jail procedures Im housed in the MHU/SHU 21 medium High security Unit but Im being subjected to the same punishment as inmates in the SHU the highest security unit the only difference is I have a cell mate and in the SHU you dont. I could have contact visits with family members Im being subjected to torture tatics such as the lights being on from 7:50am till 11:45 pm which has my vision going extremely bad, Im almost blind. Theres no hot water to take a shower. The water system is tainted and they wont let me buy bottled water or serve fresh water with meals. I only get to come out one hour at a time on Mon. Weds. Frie 3hrs a week and they dont let us go outside at night even though the yard is cemented ? caged in with cameras but they let the SHU inmates go out at night and they are the highest security inmates. And this institution is not following thier own point system. according to the point system I am with suppose to be housed in the MHU/SHU 21 This is causing me extreme mental Anguish and health problems. There ARe no rules in this jail its all made up as the days go along. By the American Correctional Association standard for Adult Correctional Institutions Standards 3-4258 (1990) which requires a minumin of one hour per day outside of cell exercise for SHU or solitary confinement inmates or no less than 5 days per week of I hur outside the cell exercise for inmates in disciplinary detention by the U.S Dept of Justice



I/M: John C. Johnson
SBI# 279192     UNIT 21-C

**DELAWARE CORRECTIONAL CENTER**
**1181 PADDOCK ROAD**
**SMYRNA, DELAWARE 19977**

LEGAL MAIL

$ 08.05⁰

To: CLERKS OFFICE
U.S. DISTRICT COURT
LOCKBOX 18
844 N. KING STREET WILM, DEL
19801

U.S.M.S.
X-RAY

LEGAL MAIL