IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM GREGORY and<br>FENEL BAINE,<br><br>        Plaintiffs,<br><br>    v.<br><br>CARL DANBERG, PERRY PHELPS, and<br>MICHAEL COSTELLO,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>) Civ. Action No. 08-539-GMS<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiffs, William Gregory ("Gregory") and Fenel Baine ("Baine") (together "the plaintiffs"), who proceed *pro se* and have been granted leave to proceed without prepayment of fees, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights. Before the court is a motion for summary judgment filed by the defendants Commissioner Carl Danberg ("Danberg"), Warden Perry Phelps ("Phelps"), and Major Michael Costello ("Costello") (collectively "the defendants"). (D.I. 100.) The plaintiffs did not respond to the motion. For the reasons that follow, the court will grant the defendants' motion for summary judgment.

## II. BACKGROUND

The plaintiffs are housed at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware.[1] The plaintiffs filed this lawsuit complaining of conditions in the VCC Medium High Housing Unit ("MHU") and the Security Housing Unit ("SHU") from November 27, 2006

---

[1]The VCC was formerly known as the Delaware Correctional Center.

through August 5, 2008.[2]  At times, both plaintiffs were both housed in the MHU/SHU unit, and allege they faced the same hardships as inmates housed in the SHU.  More particularly, the plaintiffs complain that they were subjected to the same housing restrictions as inmates housed in SHU but were housed two to a cell, rather than one to cell, in violation of their constitutional rights.[3]  (D.I. 2.)

The court construes the facts in the light most favorable to the plaintiffs, the non-moving parties.  At the VCC, the facility's highest security housing units are Buildings 17, 18, 19, and 21.  Buildings 17, 18 and, 19 are SHU and Building 21 is MHU/SHU ("MHU/SHU").[3]  In SHU, each inmate lives alone in a single cell with restricted movement and little interaction with other inmates.  In MHU/SHU inmates are housed two to a cell which allows prison staff and officials to evaluate the inmate's ability to coexist in a communal environment with greater freedom.  Baine described MHU/SHU as maximum security with a cellmate, and no handcuffs or shackles.  The remaining housing units at VCC (with the exception of a two hundred bed unit) house two or more inmates to a cell or are communal, dorm-like living.  (D.I. 101, Carroll Decl.; ex. 1 at 28.)

According to Carroll, it is important to evaluate how an inmate who has been living in a high security single cell environment (i.e., SHU) acclimates to greater freedom and the responsibility of interacting with another inmate.  Carroll describes MHU/SHU as a stepping stone for inmates to transition from a high security housing confinement to general population.

---

[2]Baine is not sure why these dates were picked.  He did not "write the lawsuit."  (D.I. 101, ex. 1 at 16.)

[3]Other claims and defendants have been dismissed and several original plaintiffs have also been dismissed.  (*See* D.I. 32, 48, 49, 70, 90.)

[3]Building 18 in SHU is called "the hole."  (D.I. 101, ex. 1 at 9.)

Rather than immediately transferring an inmate who has been living in a high security single cell environment directly into the general population, the preference is to house the inmate at the MHU/SHU at Building 21. (D.I. 101, Carroll Decl.)

Both Gregory and Baines were housed in SHU/MHU during the relevant time period. During their depositions the plaintiffs testified that the MHU/SHU housing condition of two inmates to a cell violated their constitutional rights because: (1) it is uncomfortable; (2) one worries if his cellmate is a predator, racist, or has religious issues; (3) one hopes his cellmate will not use the toilet when he is trying to eat; (4) one inmate had to stand to eat and it was uncomfortable; (5) on occasion a food tray was taken before an inmate was finished eating; (6) food was served cold; (7) one hopes his cellmate is clean; (8) it breeds violence and disease; (9) it causes frustration and stress; (10) inmates remain in their cell 165 hours per week; (11) recreation time is the same amount as received by SHU inmates. (D.I. 101, ex. 1 at 4, 18, 34, 37-40; ex. 2 at 11, 26, 48, 52, 78, 80, 82, 88.)

Gregory wrote a letter to Danberg on March 13, 2008 complaining of the conditions in MHU/SHU. Danberg advised Gregory that [t]he way to obtain more privileges is to obey institutional rules, cooperate with staff, and participate in programs for your own benefit. If you address your behavior and the causes of your incarceration you will earn a lower classification." Gregory submitted a grievance on March 25, 2008 complaining that the three hours per week recreation provided him was unconstitutional. On April 1, 2008, Gregory submitted a mental health slip for services indicating that he needed to see a mental health counselor because he felt

that he was losing touch with reality from being housed in supermax housing for such a long duration of time. Gregory was referred to mental health.[4]  (D.I. 2, exs. H, O, T.)

While Baine was housed in MHU/SHU he received recreation three hours per week. He testified that this caused him pent-up frustration and stress and took years to adjust. Baine did not know, but guessed, that the recreation time caused weak bones and his tendinitis to act up. Baine does not know if Danberg, Phelps, or Costello knew that the lack of exercise was a problem for him. (D.I. 101, ex. 1 at 40, 44, 48, 50.)

Baine also testified that the lights in MHU/SHU are on from 8:00 a.m. and 11:30 p.m. This affected him psychologically, made him anti-social, made sleep during the day difficult, and made it hard for him to read small print. He further testified that the meals did not meet dietary standards because the portions are small and that he was underfed. Baine did not know how many calories were in a portion. He was told that the food served is old, and testified that at times it tasted old while other times it was "literally sour" or "moldy." Baine opined the food was unhealthy based upon its appearance. Baine believed his physical ailments were exacerbated by lack of food. The defendants were unaware of Baine's concerns regarding the food. (D.I. 101, ex. 1 at 44, 45, 54, 55, 57, 58.)

Gregory testified that the issue in the instant lawsuit is the way MHU/SHU is run. He lost about twenty pounds because he did not want to eat the food. He does not know if the defendants knew that the food was a problem for him. Gregory complained that in MHU/SHU the inmate receives the same amount of recreation time as in SHU, but is forced to live with

---

[4]There are additional exhibits attached to the complaint wherein Gregory complained of prison conditions. However, the dates do not fall within the alleged unconstitutional time period from November 27, 2006 through August 5, 2008. (*See* D.I. 2, exs.)

another man. Because an inmate in MHU/SHU is celled with another inmate and the inmates eat

in their cell, one person must stand and eat, while the other sits to eat. Gregory testified that he

was unable to shower every day and this affected him mentally and emotionally. In addition, he

contracted a rash, and assumes it occurred because he could not shower daily. Gregory testified

that cellmate problems due to sexuality, religion, and race issues caused him mental, but not

physical, problems. (D.I. 101, ex. 2 at 14, 18, 50, 59, 79, 60, 84, 86-90.)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Fed.

R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely

disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute

about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return

a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue

for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v.

Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989). Pursuant to Rule 56(c)(1),

---

[5]Rule 56 was revised by amendment effective December 1, 2010. "The standard for
granting summary judgment remains unchanged," and "[t]he amendments will not affect
continuing development of the decisional law construing and applying these phrases." Fed. R.
Civ. P. 56 advisory committee's note to 2010 Amendments.

a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

The defendants move for summary judgment on the grounds that the plaintiffs cannot present evidence to demonstrate a disputed genuine issue as to any material fact. The plaintiffs did not respond to the motion. However, the court will not grant the entry of summary judgment without considering the merits of the defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

## IV. DISCUSSION

The plaintiffs complain that the conditions of confinement in MHU/SHU violated their constitutional rights. More particularly, they take issue with the fact that inmates in SHU are single celled while inmates in MHU/SHU are housed two to a cell. The plaintiffs testified that the housing conditions in MHU/SHU caused uncomfortable living conditions, they received only three hours of recreation per week, three showers per week, the food was inadequate and cold, and the lighting remained on for many hours.

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

The evidence of record concerning the conditions of confinement does not demonstrate constitutional violations. The plaintiffs complain they were housed two to a cell. The defendants, however, provided a legitimate penological reason for the double celling, unchallenged by the plaintiffs. Inmates in MHU/SHU were previously single celled while in SHU. When an inmate progressed to MHU/SHU, a less restrictive housing assignment, he was

housed with another inmate so that prison official could evaluate the inmate's adaption to more freedom and communal living. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Hence, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security, such as the practice at issue of transferring SHU inmates to MHU/SHU prior to placement in the general population. *See Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

In addition, double-bunking of cells, alone, is not *per se* unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337 (1981); *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 1000 (3d Cir. 1983). Doubling celling may, however, amount to cruel and unusual punishment if combined with other adverse conditions. *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (considerations that are relevant in determining if double celling violates the Eighth Amendment "include the length of confinement, the amount of time prisoners must spend in their cells each day, sanitation, lighting, bedding, ventilation, noise, education and rehabilitation programs, opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such a plumbing, ventilation, and showers."); *but see North v. White,* 152 F. App'x 111 (3d Cir. 2005) (not published) (when inmates are triple-celled, an inmate's general allegations of tension, stress, and fear of increased hostility arising from triple-bunking in federal prison did not assert the kind of serious deprivation of basic human needs required to establish an Eighth Amendment violation). While both plaintiffs' complaint of stress and tension and the

uncomfortable conditions of living with another person, they provide no evidence of harm as a result of the MHU/SHU housing assignment.

The plaintiffs claim they were not afforded adequate time for exercise. The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)). The lack of exercise can only rise to a constitutional level, however, "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain*, 600 F.2d at 199. Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated. While the denial of exercise may, in certain instances, rise to the level of an Eighth Amendment violation, such was not the case here. *Cf. Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (forty-five minutes of exercise per week not constitutionally infirm); *see also Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding denial of outdoor recreation for thirteen days not cruel and unusual punishment). The plaintiffs were provided exercise and there is no evidence of record they sustained tangible harm because they were not afforded more than three hours of exercise per week.[6]

Baine complained that the lighting in MHU/SHU affected him because the lights were on from 8 a.m. to 11 p.m. Some circuits have held that the constitutional requirement of adequate shelter for an inmate includes the provision of adequate lighting. *See Hoptowit v. Spellman*, 753

---

[6]There is no medical evidence to support Baine's testimony that he "guessed" his weak bones and tendinitis flare-up were caused by not having more than three hours of exercise per week.

F.2d 779, 783 (9th Cir. 1985). Further, courts have noted that "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination." *LeMaire v. Maass,* 745 F.Supp. 623, 636 (D.Or. 1990), *vacated on other grounds by* 12 F.3d 1444, 1458-59 (9th Cir. 1993); *see also Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir. 1996) (holding that an allegation "that large florescent lights directly in front of and behind [an inmate's] cell shone into his cell 24 hours a day, so that his cell was 'constantly illuminated, and [he] had no way of telling night or day,' and that this condition caused him 'grave sleeping problems' and other mental and psychological problems" was sufficient to state a claim of cruel and unusual punishment).

Baine did not testify that he was subjected to constant illumination, or that he has suffered any significant medical condition as a result of the pattern of lighting in his cell. The facts before the court do not demonstrate a constitutional violation. *See Bacon v. Minner*, 229 F. App'x 96 (3d Cir. 2007) (not published).

The plaintiffs testified that the food in MHU/SHU is served cold, portions are small, and sometimes the food is old, moldy or sour and, in general, is unhealthy. The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir. 1980); *see also Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir. 1983). Thus, "[a] substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002).

Nevertheless, while "a prisoner's diet must provide adequate nutrition," prison officials "cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." *Mays v. Springborn,* 575 F.3d 643, 648 (7th Cir. 2009) (citation omitted). "Whether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Berry v. Brady,* 192 F.3d 504, 507 (5th Cir. 1999) (quoting *Talib v. Gilley,* 138 F.3d 211, 214 n. 3 (5th Cir. 1998)). As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'gruel' [providing 1000 calories a day] might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney,* 437 U.S. 678, 686-87 (1978).

The evidence of record fails to demonstrate a constitutional violation. Most notably, there is no evidence of record that the defendants were aware that the food was problematic. The plaintiffs testified that the portions were small, but there is no evidence that they were nutritionally inadequate. While Gregory testified that he lost twenty pounds, it was because he "did not want to eat the food." The biggest complaint seems to be that the food was served cold. However, cold food does not rise to the level of a constitutional violation. *Laufgas v. Speziale,* 263 F. App'x 192, 198 (3d Cir. 2008) (not published) (finding no constitutional right to hot meals every day); *Brown-El v. Delo,* 969 F.2d 644, 648 (8th Cir. 1992) (finding no constitutional violation for serving prisoner cold food).

Even when considering the combined factors complained of by the plaintiffs at MHU/SHU, the evidence of record does not lead to the conclusion that the plaintiffs were denied

the minimal civilized measures of life's necessities or that the defendants acted with deliberate

indifference to their health or safety.  Having reviewed the evidence and the applicable law, the

court concludes that no reasonable jury could find that the defendants violated the plaintiffs'

constitutional rights.  For the above reasons, the court will grant defendants' motion for summary

judgment.

## V. CONCLUSION

For the above reasons, the court will grant the defendants' motion for summary judgment.

An appropriate order will be issued.

_____, 2011
Wilmington, Delaware

CHIEF, UNITED STATES DISTRICT JUDGE